IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **ANDRE MCKINNEY,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] Case No: 1:20-cv-01536-ACA |
| | ] |
| **LIEUTENANT RONALD CARTER,** | ] |
| **WARDEN KAREN CARTER,** | ] |
| | ] |
| **Defendants.** | ] |

## **MEMORANDUM OPINION**

Before the court is Defendant Karen Carter's ("Warden Carter") motion to dismiss. (Doc. 4). Plaintiff Andre McKinney is a prisoner at Childersburg Community Based Facility ("Childersburg"), and he alleges that Defendant Ronald Carter ("Lt. Carter") struck him in the head several times with a "nail-riddled one-by-four wooden board." (Doc. 1 at 3). At the time of the alleged attack, Warden Carter was the warden of Childersburg and Lt. Carter's supervisor. (Doc. 1 at 7 ¶ 28). Mr. McKinney asserts claims against Lt. Carter for violations of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, assault, and battery. (Doc. 1 at 5, 7). He also asserts a failure to train claim against Warden Carter, pursuant to 42 U.S.C. § 1983. (*Id.* at 6).

Because Mr. McKinney has not pled facts that state a failure-to-train claim against Warden Carter, the court **WILL GRANT** Warden Carter's motion.

I.     **BACKGROUND**

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In 2014 and 2015, Warden Carter was an assistant warden at St. Clair Correctional Facility ("St. Clair"), and Lt. Carter was a correctional officer at the same facility. (*Id.* at 6 ¶ 28). While working at St. Clair, Lt. Carter physically abused three inmates: he choked an inmate to unconsciousness; struck an inmate and caused "severe injuries to his jaw, mouth, and teeth;" and joined other officers in assaulting an inmate. (Doc. 1 at 4 ¶¶ 14–16). He also forced an inmate to stand outside an office for fourteen consecutive hours and failed to protect an inmate from attack by other inmates. (*Id.* at 4–5 ¶¶ 14, 17).

In October 2014, several inmates at St. Clair filed a complaint in the Northern District of Alabama against several St. Clair employees, including Warden Carter.[1] (Doc. 1 at 4 n.1); *Cheatham v. Thomas*, Civ. No. 4:14-cv-01952-RDP-JHE (A.L.N.D. October 13, 2014). That complaint included several allegations against Lt. Carter, although he was not a named defendant. *Cheatham*, Civ. No. 4:14-cv-

---

[1] Because it is incorporated by reference in the complaint and its existence is "(1) central to the plaintiff's claim and (2) undisputed," the court may consider the *Cheatham* complaint at the motion to dismiss stage. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, undisputed means only that the authenticity of the document is unchallenged. *Id.* The parties dispute whether the facts pled in the *Cheatham* complaint are true, but the court does not consider the veracity of the claims in *Cheatham*.

01952-RDP-JHE, Doc. 1 at 10–11. The allegations against Lt. Carter here match those in *Cheatham*, except for the allegation that he failed to protect an inmate.[2] *Id.* at 11.

During the events resulting in this case, Warden Carter was the warden of Childersburg, Lt. Carter was a correctional officer at Childersburg, and Mr. McKinney was an inmate at Childersburg. (Doc. 1 at 1–2 ¶¶ 1–3). On the day of Mr. McKinney's injury, Lt. Carter entered Mr. McKinney's cell to search for contraband. (*Id.* at 3 ¶ 7). Finding none, Lt. Carter handcuffed Mr. McKinney, removed him from his cell, and searched his person. (*Id.*) Again, Lt. Carter did not find any contraband. (*Id.*). Lt. Carter then brought Mr. McKinney to the prison's shift office for interrogation and told him that "he needed to 'help himself' and admit to being in possession of contraband." (Doc. 1 at 3 ¶¶ 8, 9). Mr. McKinney denied possessing any contraband and said that "he was offended by [Lt. Carter's] accusations." (*Id.* at 9).

Lt. Carter then "grabbed a nail-riddled one-by-four wooden board and struck a handcuffed and defenseless McKinney in the head multiple times." (Doc. 1 at 3 ¶ 10). Mr. McKinney shouted for help and "ran from the office back to his

---

[2] Mr. McKinney cites to another case against Lt. Carter that includes the allegation that he failed to protect an inmate. (Doc. 1 at 5 ¶ 17 n.4) (citing *Cook v. Carter*, Civ. No. 4:15-01489-LSC-SGC (A.L.N.D. Aug. 8, 2015)). That complaint does not appear to involve Warden Carter and does not impact Mr. McKinney's claim against her.

dormitory." (*Id.* at 4 ¶ 11). After receiving medical treatment for his injuries, Mr. McKinney was transferred to a different correctional facility. (*Id.* at 4 ¶ 12).

Seeking a declaratory judgment and damages, Mr. McKinney brought this suit. (Doc. 1). He alleges state-law claims and a violation of the Eighth Amendment against Lt. Carter. (*Id.* at 5, 7). Mr. McKinney also brings a claim against Warden Carter under 42 U.S.C. § 1983, alleging that Warden Carter's failure to properly train Lt. Carter caused Mr. McKinney's injury. (*Id.* at 6–7). Asserting the defense of qualified immunity, Warden Carter filed this motion to dismiss the claim against her. (Doc. 4). Because Mr. McKinney fails to adequately allege that Warden Carter violated a clearly established constitutional right, the court **WILL GRANT** Warden Carter's motion and **WILL DISMISS** the claim against her **WITHOUT PREJUDICE**.

## II.   DISCUSSION

Warden Carter moves to dismiss Mr. McKinney's claim against her under Federal Rule of Civil Procedure 12(b)(6) on the grounds of qualified immunity. (Doc. 4 at 1). "To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether a plaintiff has stated a claim, the court follows a two-step approach, "first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679; *see also Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

Discounting the complaint's conclusory allegations, the court is left to consider whether the following facts plausibly state a claim against Warden Carter: (1) while he worked at St. Clair, Lt. Carter physically assaulted three inmates, forced an inmate to stand in one place for fourteen hours, and failed to protect another inmate from prisoner assault, (doc. 1 at 4 ¶¶ 14–17); (2) Warden Carter worked at St. Clair as an assistant warden when Lt. Carter committed these abuses, (*id.* at 7 ¶ 28); (3) Warden Carter was one of nine named defendants in a lawsuit that included four of the same allegations against Lt. Carter that Mr. McKinney pleads here, although Lt. Carter was not a defendant in that suit, (*id.* at 4 n.1); and (4) Warden Carter did not train correctional officers in the procedures articulated in the Alabama Department of Corrections' Standards of Conduct and Discipline

5

("ALDOC Standards") (*id.* at 6 ¶ 27). Mr. McKinney argues that these facts state a claim for failure-to-train liability under § 1983, but they do not.

Warden Carter argues that she is entitled to qualified immunity because Mr. McKinney has not alleged facts that show she violated a clearly established constitutional right. (Doc. 4 at 6, 11). "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, it is undisputed that Warden Carter was acting within the scope of her discretionary authority. Thus, the burden shifts to Mr. McKinney to establish that Warden Carter violated his constitutional rights and that the rights involved were "clearly established." *Terrell v. Smith*, 668 F.3d 1244, 1249–50 (11th Cir. 2012). In ruling on qualified immunity, the court is permitted to decide which of these two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Mr. McKinney's claim rests on the allegation that Lt. Carter used excessive force in violation of the Eighth Amendment. (Doc. 1 at 6 ¶ 23). For purposes of this motion, the court assumes that Lt. Carter violated the Eighth Amendment by assaulting

Mr. McKinney. But Lt. Carter's actions alone do not establish Warden Carter's liability.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley*, 30 F. 3d 1390, 1396 (11th Cir. 1994). Further, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). And "a supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Keith v. Dekalb Cnty.*, 749 F.3d 1034, 1053 (11th. Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (alterations accepted).

A supervisor is liable for failing to train her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Belcher*, 30 F.3d at 1397 ("A supervisory official is not liable under section 1983 for an injury resulting from [her] failure to train subordinates unless [her] 'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains.") (quoting *Popham v. City of Talladega*, 908 F.2d

1561, 1564–65 (11th Cir. 1990)).  A failure to train amounts to deliberate indifference only "when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right." *Id.* at 1397–98.  The plaintiff must establish that the supervisor had "subjective knowledge of a risk of serious harm," and that the supervisor disregarded the risk "by conduct that is more than gross negligence." *Franklin*, 738 F.3d at 1250.

In *Franklin*, the Court held that alleging the "names and titles" of the supervisory defendants without including "the significance of their titles, their individual roles in the jail . . . or any other characteristics that would bear on whether they knew about but were deliberately indifferent to [the subordinate's] conduct and the risk he posed" was insufficient to establish that the supervisory defendants knew of a subordinate's past conduct. *Id.* at 1251–52. Warden Carter argues that the complaint here suffers from a similar deficiency.  (Doc. 4 at 8–9).  Because the only fact in the complaint describing Warden Carter's role at St. Clair is her title, Warden Carter argues that Mr. McKinney "does not make plausible factual allegations that Warden Carter was even *aware* of [Lt. Carter's] prior uses of force."  (Doc. 4 at 9) (emphasis in original).

8

It is reasonable to infer from the facts, however, that Warden Carter was aware of Lt. Carter's past conduct.  Unlike in *Franklin*, the complaint here provides more than Warden Carter's name and title at St. Clair: Mr. McKinney's complaint points out that Warden Carter was a defendant in a case that included allegations against Lt. Carter. (Doc. 1 at 4 n.1); *Cheatham*, No. 4:14-cv-01952-RDP-JHE.  Four of the allegations in the *Cheatham* complaint overlap with the allegations pled here: Lt. Carter choked an inmate; made an inmate stand outside the shift office for fourteen hours;[3] struck an inmate, inflicting severe injuries to his jaw, mouth, and teeth; and assaulted another inmate. (Doc. 1 at 4 ¶ 14).  Viewing this evidence in the light most favorable to Mr. McKinney, it is reasonable to infer that the *Cheatham* complaint refers to the same instances of abuse as here.  Accordingly, Warden Carter's involvement in the *Cheatham* suit gives rise to the reasonable inference that she knew of the allegations against Lt. Carter.

But her knowledge of Lt. Carter's conduct at St. Clair is not enough.  To establish failure-to-train liability, the allegations must support the reasonable inference that the supervisor had "actual or constructive notice that a particular omission in [her] training program causes [her] employees to violate citizens' constitutional rights." *Harris*, 489 U.S. at 388.  It is not enough that the supervisor

---

[3] In *Cheatham*, the plaintiffs alleged that Lt. Carter physically abused the inmate he forced to stand outside the shift office.  Civ. No. 4:14-cv-01952-RDP-JHE, Doc. 1 at 11.  Mr. McKinney does not include that allegation in his complaint. (Doc. 1 at 4 ¶ 14).

9

be aware of a risk of constitutional violations, the supervisor must be aware that "a particular omission in [her] training program" is causing "employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61. Only with such knowledge could Warden Carter "be deemed deliberately indifferent" by choosing "to retain that program." *Id.* To establish notice, facts showing a "pattern of similar constitutional violations by untrained employees [are] ordinarily necessary."[4] *Id.* at 62 (quotation marks omitted).

This is where the complaint falls short: none of the allegations of previous misconduct alleged in the complaint occurred at Childersburg. Instead, they all occurred at St. Clair, where Warden Carter was an assistant warden. There is nothing in the complaint regarding the training program at St. Clair, or Warden Carter's role in administering such a program. It is possible that Lt. Carter received deficient training at St. Clair and that his continued violations of the constitution are a result of that training. But even drawing that inference, there are no facts here to suggest that Warden Carter knew what training was administered at St. Clair or whether that training was given to Lt. Carter. Accordingly, from the facts alleged here, Warden Carter could not know whether her training program at Childersburg

---

[4] The Supreme Court left open the possibility that a single incident may prove sufficient to hold a supervisor liable for a failure to train. *Harris*, 489 U.S. at 390 n.10. In *Keith*, the Eleventh Circuit declined to "flush[ ] out the Supreme Court's hypothetical basis for § 1983 relief" because the facts of that case did not make it "obvious" that the failure to train at issue amounted to deliberate indifference. 749 F.3d at 1053 n.56. Likewise, the facts here do not warrant application of the Court's "single incident" failure-to-train theory.

was causing Lt. Carter to violate citizens' constitutional rights, or whether it was some other factor—including Lt. Carter's training at St. Clair, or his disregard of his training altogether.

Mr. McKinney alleges only one constitutional violation under Warden Carter's supervision at Childersburg, the violation at issue in this case. Without a pattern of similar constitutional violations at Childersburg, there is nothing in the complaint to suggest that Warden Carter knew that her training program was deficient and was deliberately indifferent in choosing to retain the program. As pled, the complaint here does not establish a causal connection between Warden Carter's failure to train officers in the procedures articulated in the ALDOC Standards and Mr. McKinney's injury. Accordingly, Mr. McKinney's § 1983 claim against Warden Carter fails.

Because Mr. McKinney has not stated a claim for a violation of the constitution, the court will not address the clearly established prong of qualified immunity.

### III.   CONCLUSION

For the reasons above, the court **WILL GRANT** Warden Carter's motion and **WILL DISMISS** Mr. McKinney's claim against her **WITHOUT PREJUDICE**.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this May 24, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE