FILED

2021 Dec-15  AM 10:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **ANDRE MCKINNEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:20-cv-1536-ACA** |
| | } | |
| **RONALD CARTER,** | } | |
| **WARDEN KAREN CARTER** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff Andre McKinney's motion to amend. (Doc. 19). Defendant Ronald Carter ("Lt. Carter") opposes the motion on the basis that amendment would be futile because the proposed amended complaint does not cure the defects that led the court to dismiss the initial complaint against Warden Karen Carter ("Warden Carter"). (Doc. 24). The court agrees and **DENIES** Mr. McKinney's motion for leave to amend.

## I.      BACKGROUND

Mr. McKinney filed this complaint against Warden Carter and Lt. Carter in October 2020. (Doc. 1). He asserted claims pursuant to 42 U.S.C. § 1983 against Lt. Carter for violations of the Eighth Amendment. (*Id*. at 6). He also alleged state

law claims for assault and battery against Lt. Carter. (*Id*. at 7). Against Warden Carter, Mr. McKinney asserted a failure to train claim pursuant to 42 U.S.C. § 1983. (*Id*. at 6). Lt. Carter answered Mr. McKinney's complaint (doc. 5), but Warden Carter moved to dismiss the claim against her on grounds of qualified immunity. (Doc. 4). The court granted Warden Carter's motion and Mr. McKinney now seeks to amend his complaint to set out a new theory of liability against Warden Carter. (Doc. 19).

Rather than asserting a failure to train claim, the proposed amended complaint seeks to hold Warden Carter liable on a theory of supervisory liability. (Doc. 19-1 at 8–9 at 8). To support his claim, Mr. McKinney alleges several additional facts not included in the original complaint: (1) Lt. Carter referred to Warden Carter as one of his supervisors at St. Clair; (2) the assistant warden is responsible for "staff planning, discipline and security"; and (3) despite several instances of excessive force against inmates, Warden Carter, while in her capacity as Assistant Warden at St. Clair, failed to discipline Lt. Carter. (*Id*. at 6). These additional facts are insufficient to establish a claim against Warden Carter under a theory of supervisory liability.

## II.   DISCUSSION

Federal Rule of Civil Procedure 15 requires the court to "freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A court

may consider several factors when deciding whether to grant a motion to amend, including undue delay, bad faith or dilatory motive …, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (quotation marks omitted) (alterations in original).  "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

Mr. McKinney's proposed amended complaint alleges a claim of supervisory liability against Warden Carter.  Because his amended claim is insufficient to survive Warden Carter's defense of qualified immunity at the motion to dismiss stage, such amendment would be futile.  Therefore, denial of leave to amend is appropriate.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (quotations omitted).  To receive the protection of qualified immunity, a defendant must first demonstrate that she was acting within the scope of her discretionary authority.  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).   Once the

defendant has made such a showing, the burden of overcoming the defense shifts to the plaintiff, who must prove that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

It is undisputed that Warden Carter was acting within the scope of her discretionary authority. Therefore, the burden at the motion to dismiss stage would shift to Mr. McKinney to establish that Warden Carter violated his clearly established constitutional rights. *Id.* In ruling on qualified immunity, the court is permitted to decide which of the two prongs of the analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For purposes of this motion, the court assumes that Defendant Lt. Carter violated the Eighth Amendment by assaulting Mr. McKinney. But something more is required to hold Warden Carter liable for Lt. Carter's violation. "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). Supervisory liability is imposed only "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The Eleventh Circuit recognizes three ways a plaintiff can establish the necessary causal connection. *See Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003). First, a plaintiff can allege facts that show "the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. at 1235 (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993)). Second, a plaintiff can show that a "supervisor's improper 'custom or policy… resulted in deliberate indifference to constitutional rights.'" *Id*. at 1235–34 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)). Finally, "[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so." *Id*. at 1234 (quoting *Braddy v. Fla. Dep't of Lab. And Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

Discounting the complaint's conclusory allegations, the court is left to consider whether the following facts plausibly state a claim for supervisory liability against Warden Carter given the above framework: (1) while working at St. Clair over five years ago, Lt. Carter physically assaulted three inmates and forced another to stand in one place for fourteen hours, (doc. 19-1 at 4–5 ¶¶ 16, 17, 18); (2) Warden Carter worked at St. Clair as an assistant warden when Lt. Carter committed these abuses, (*id*. at 6 ¶ 23); (3) Warden Carter was one of Lt. Carter's supervisors at the time and had the authority to discipline him, (*id*. at ¶¶ 24, 25); (4) Warden Carter

was one of nine named defendants in a lawsuit that included four of the same allegations against Lt. Carter that Mr. McKinney pleads here, although Lt. Carter was not a defendant in that suit, (*id*. at 5 n.2); and (5) despite several instances of excessive force, Lt. Carter's personnel file does not reflect that he was ever disciplined (*id*. at 6 ¶ 26).

Mr. McKinney does not allege that Warden Carter directed Lt. Carter to assault him or that she had actual knowledge that Lt. Carter planned to do so. Nor does Mr. McKinney allege the existence of a specific custom or policy that resulted in his injury. Instead, Mr. McKinney argues that the above facts state a claim for supervisory liability under the third theory for demonstrating a causal connection. (Doc. 25 at 5). They do not.

To state a claim for supervisory liability under the third theory, Mr. McKinney must first show that Warden Carter was a supervisor responsible for addressing Lt. Carter's abusive conduct at St. Clair. *See Hartley*, 193 F.3d at 1269. In the light most favorable to Mr. McKinney, Warden Carter had the authority to discipline Lt. Carter in her capacity as Assistant Warden. (Doc. 19-1 at 6 ¶¶ 25, 26). But even with the benefit of that presumption, the claim still fails to meet the Eleventh Circuit's "extremely rigorous" standard for supervisory liability. *See Braddy v. Fla. Dep't of Lab. and Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Before liability may be imposed, the plaintiff must establish "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.*; *see also Holloman*, 370 F.3d at 1294. However, violations by a single subordinate employee may be "sufficiently egregious" to impose supervisor liability if that employee violates constitutional rights "on a near-daily basis." *Holloman*, 370 F.3d at 1294.

Here, Mr. McKinney alleges four prior acts of abuse by Lt. Carter at St. Clair, and just three of those four acts involved the application of physical force against an inmate. (Doc. 19-1 at 4–5 ¶¶ 16, 17, 18). Moreover, each of these instances of allegedly unlawful behavior occurred over five years ago at St. Clair, not at Childersburg. (*Id.*). Mr. McKinney has made no allegations that Lt. Carter—or any other officer under Warden Carter's authority—has committed *any* violation at Childersburg prior to the assault involved in this case.

Mr. McKinney cites *Mathews v. Crosby*, 480 F.3d 1265 (11th Cir. 2007) in support of imputing Warden Carter's knowledge and Lt. Carter's conduct at Childersburg to St. Clair. (Doc. 25 at 5–6). In *Mathews*, the court found that plaintiff had produced sufficient evidence of widespread abuse to survive summary judgment

because the defendant had been warned about abusive guards prior to his becoming the warden.  *Id*. at 1275.  But the facts in *Mathews* differ in quantity and kind from the facts found here.

In *Mathews*, the defendant's predecessor as warden asked defendant "to sit with him for a desk audit to review all issues and problems … because [the prison] had a notorious reputation for beating of inmates," but the defendant refused the meeting; when defendant assumed control of the prison, he "discontinued the practice of videotaping cell extractions" which "sent a message to corrections officers that the administration at [the prison] was going to permit further abuse of inmates"; and the warden did not read the "numerous complaints" sent to him, including "letters from several different inmates claiming that corrections officers had threatened to kill them."  *Id*. at 1271–74 (quotations omitted).   Moreover, the plaintiff in Mathews was beaten three times in one week and his mother personally contacted the ward to report that a prisoner told her that her son was in a danger and being abused by prison guards.  *Id*. at 1270.  The court held that, taken together, the evidence showed that inmate abuse "occurred with sufficient regularity as to demonstrate a history of widespread abuse at [the prison]" and "support[ed] a conclusion that [the warden] knew of the widespread abuse and was 'on notice of the need to correct or to stop' abuse by officers."  *Id*. at 1275 (quoting *Cottone*, 326 F.3d at 1362).

Those facts are not close to the facts found in this case. Although the facts alleged are deeply troubling, four incidents occurring five years ago at a completely different facility does not constitute widespread abuse. Indeed, by Mr. McKinney's own characterization, he has alleged only "*several* instances of unlawful behavior" by Lt. Carter. (Doc. 19-1 at 5 ¶ 19) (emphasis added). And the Eleventh Circuit has made clear that the standard is not several instances of unlawful behavior, but constitutional violations that are "obvious, rampant, flagrant, and of continued duration." *Brown*, F.2d at 671. Thus, while the court in no way condones Lt. Carter's alleged misconduct, it cannot find that such misconduct occurred with "sufficient regularity" to justify holding Warden Carter liable in her supervisory capacity. *See Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006).

Even when taken as true and viewed in the light most favorable to Mr. McKinney, the facts in the proposed amended complaint do not satisfy the "extremely rigorous" standard for establishing supervisory liability in the Eleventh Circuit. *Braddy*, 133 F.3d at 802. Therefore, Mr. McKinney's claim against Warden Carter, as amended, suffers from a similar defect as did the claim the court dismissed. (Doc. 17). Warden Carter's knowledge of Lt. Carter's conduct at St. Clair is insufficient on its own to establish supervisory liability, just as it was insufficient on its own to establish liability based on a failure to train. Even if Warden Carter knew

of Lt. Carter's isolated acts of abuse at St. Clair (doc. 19-1 at 9), that knowledge does not satisfy the additional requirement that the abuse be widespread.

## III.   CONCLUSION

Because Mr. McKinney's proposed amended complaint fails to allege facts that state a claim for relief against Warden Carter, granting leave to amend the complaint would be futile.  Accordingly, the court **DENIES** Mr. McKinney's motion to amend.

**DONE** and **ORDERED** this December 15, 2021.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE